AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C #336
Alameda, CA 94501
Telephone: 510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
PAMELA BALL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA BALL<br><br>    Plaintiff,<br><br>v.<br><br><br>PROVIDENCE ST. JOSEPH HEALTH; ST. JOSEPH HOSPITAL OF ORANGE<br><br><br>    Defendants. | CASE NO. 8:25-cv-00334<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1.    **PREFETORY STATEMENT:** This is Plaintiff's fourth Americans with Disabilities Act ("ADA") lawsuit in her lifetime. It does not involve any architectural barriers, only service dog denial claims. Plaintiff's law firm is not a high frequency litigation firm, and does not represent high frequency litigants as defined by state law. Plaintiff PAMELA BALL complains of Defendants

1

PROVIDENCE ST. JOSEPH HEALTH; ST. JOSEPH HOSPITAL OF ORANGE and alleges as follows:

2.   **INTRODUCTION:**  On December 27, 2024, Plaintiff was denied access to the emergency room at Providence St. Joseph's Hospital Orange ("Hospital") located at 1100 West Stewart Drive, Orange, California 92868 due to the presence of her service dog Mason.  Plaintiff's daughter was being treated in the ER, and she was there to support her daughter in a moment of crisis. Plaintiff was initially allowed to enter the ER and be with her daughter, but Defendants' staff later made it clear that her service dog was not welcome there without any reference to Plaintiff's service dog's behavior. Defendants' staff asked her to leave her service dog in her car, told her that since her daughter was 24 years old she probably did not need her mom there, intentionally tried to provoke a reaction from her service dog, and posted security outside Plaintiff's daughter's room. All of these actions were attempts to intimidate Plaintiff, make Plaintiff feel uncomfortable, and deny her right to be accompanied by her service dog.

3.   Plaintiff intended to temporarily leave the Hospital to make a few phone calls. When she returned, she was refused access by security personnel due to the presence of her service dog without any further justification, and without any individualized assessment of her service dog. Defendants' security guards told Plaintiff that hospital staff did not feel comfortable working around animals and that she would not be allowed entrance into the Hospital while accompanied by her service dog.

4.   After Plaintiff was denied entry to the hospital, Plaintiff called and spoke to a manager at the Hospital who confirmed that Plaintiff could not come inside the ER with her service dog.  Plaintiff was denied equal service by Defendants because she needs her service dog to equally enjoy the premises compared with non-disabled persons. Plaintiff was distraught from her interactions with Defendants.  She was worried about her daughter, and Defendants refused to

1  allow her to see Alyssa.

2      5.    Defendants' decision to bar Plaintiff from accompanying her daughter

3  in the ER because of her service dog contravenes the ADA's mandate to allow

4  disabled persons equal enjoyment of the facility and the Department of Justice's

5  technical assistance and guidance on the subject of "Service Animals." In relevant

6  part, the guidance states:

7   • A person with a disability cannot be asked to remove his service

8      animal from the premises unless: (1) the dog is out of control and the

9      handler does not take effective action to control it or (2) the dog is not

10     housebroken. When there is a legitimate reason to ask that a service

11     animal be removed, staff must offer the person with the disability the

12     opportunity to obtain goods or services without the animal's presence.

13  DOJ 2010 "Service Animal" guidance available at

14  https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis

15  added). Further,

16     **Under the ADA, State and local governments, businesses, and**

17     **nonprofit organizations that serve the public generally must allow**

18     **service animals to accompany people with disabilities in all areas of**

19     **the facility where the public is allowed to go.** For example, in a

20     hospital it usually would be inappropriate to exclude a service animal

21     from areas such as patient rooms, clinics, cafeterias, or examination

22     rooms. However, it may be appropriate to exclude a service animal

23     from operating rooms or burn units where the animal's presence may

24     compromise a sterile environment.

25  *Id.* (emphasis in original). The Department of Justice FAQ on Service

26  Animals further clarifies:

27     **Q14. Does a hospital have to allow an in-patient with a disability to**

28     **keep a service animal in his or her room?**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**A.** Generally, yes. *Service animals must be allowed in patient rooms and anywhere else in the hospital the public and patients are allowed to go.* They cannot be excluded on the grounds that staff can provide the same services.

https://www.ada.gov/resources/service-animals-faqs/. (emphasis added).

6.     On December 27, 2024, Defendants refused to allow Plaintiff to visit her daughter in the ER due to the presence of her task trained service dog despite that her service dog was under her control, task trained, and is housebroken. Further, Defendants did not cite any of those as reasons for refusing service to Plaintiff.  Defendants simply told Plaintiff that she would not be allowed to see her daughter in the ER if she was accompanied by her service dog.

7.     Plaintiff may have the need to accompany her daughter to the ER in the future.  However, she cannot do so until the policies of the Hospital are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force Defendants to change their discriminatory and illegal policies and compensate her for refusing to allow her to accompany her daughter in the ER because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Providence St. Joseph's Hospital Orange.

8.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

9.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

4

10.    **INTRADISTRICT:**  This case should be assigned to the Southern Division because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

11.    **PARTIES:**  Plaintiff Pamela Ball is a "qualified" disabled person who uses the assistance of a service dog to ameliorate her disability.  Plaintiff suffers from an irregular heartbeat which can cause her blood pressure to drop to dangerously low levels.  When her blood pressure drops, she can faint and fall down unless she takes immediate action to raise her blood pressure or at the very least get herself to a safe place.  Plaintiff's disability affects her abilities to walk, stand and think clearly.

12.    Plaintiff relies upon her service dog, a Maltipoo named "Mason" to assist her with certain tasks including alerting her to any decrease in her blood pressure so that she can sit down, put her head between her legs, drink water to hydrate herself before her blood pressure drops to dangerous levels, and take medication if necessary.  In order to alert Plaintiff, Mason is trained to lick Plaintiff's calf to alert, then stand on his hind legs and put his front paws on Plaintiff's knee until Plaintiff takes action to raise her blood pressure.

13.    Plaintiff trained Mason to perform this task herself.  She researched online regarding the training of service dogs, and then she trained him over the course of many months.  She would do so by bringing him close to her whenever she was experiencing symptoms of low blood pressure so that he could see and feel her reactions.  Then, Plaintiff would point to her calf to indicate that Mason should lick her and then gesture for him to put is front paws on her knee.  Whenever he did the task, she would reward him with treats and praise.  Mason and Plaintiff have been working together for over two years.  Plaintiff continues to reinforce the training with Mason daily.  Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of walking, standing, and thinking clearly.  42 U.S.C. § 12102, 29 U.S.C.

§ 705(9)(B), and California Government Code § 12926(1).

14.    Defendants PROVIDENCE ST. JOSEPH HEALTH; ST. JOSEPH HOSPITAL OF ORANGE, are and were at all times relevant to this Complaint the owners, operators, lessors and/or lessees of the subject business located at 1100 W. Stewart Drive, Orange, California 92868, known as the Providence St. Joseph's Hospital Orange ("Hospital").  Plaintiff is informed and believes that each of the Defendants herein is the agent, employee or representative of each of the other Defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.

15.    The Hospital is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

16.    **FACTUAL STATEMENT:**  Plaintiff Pamela Ball has been working with her service dog Mason for approximately two and a half years.  Mason is a Maltipoo who was individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Mason to serve her specific needs throughout their relationship.  Mason is specifically trained to assist Plaintiff by alerting her to changes in her heart rate and blood pressure so that she can get herself to a safe place in a sitting position in a safe place before her blood pressure drops to dangerous levels.  Prior to working with Mason, Plaintiff was hospitalized several times due to her blood pressure dropping to low.  However, she has not been hospitalized since working with Mason because he is able to alert her before she realizes her blood pressure is dropping, and Plaintiff can take certain steps to raise her blood pressure before it drops too low.

17.    Mason is a working dog; he is not a pet.  Mason usually wears a vest

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

identifying him as a service dog. Plaintiff and Mason have trained extensively together, and they supplement that training daily.  Plaintiff takes Mason everywhere with her in public.  It is important they stay together as much as possible because (a) Mason provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Mason goes.

18.     Around 4:30 am on December 27, 2024, Plaintiff received a panicked voicemail from her daughter Alyssa. Alyssa informed Plaintiff that she was having difficulty breathing, and she was in the emergency room at Orange County Global Hospital.  Alyssa told her mother that she was scared and asked her to come be with her in the ER as soon as possible. Plaintiff and her service dog Mason left their home as soon as possible and drove to the hospital where her daughter was in the ER. After a few hours, Plaintiff's daughter left that ER without being treated. Plaintiff met her daughter in the parking lot of that hospital, and she was still having difficulty breathing.  Plaintiff called a crisis hotline to discuss how she could best get treatment for her distressed child. After Plaintiff explained the situation and described the treatment that Plaintiff had received at the ER she had just left, the crisis team advised Plaintiff to drive away from the hospital where she was, then call them again if Alyssa needed an assessment or urgent medical care.

19.     Plaintiff drove away from the hospital, but it appeared that Alyssa still needed help. She called the crisis team again. The crisis team arrived and assessed Alyssa.  They found her vitals erratic, and the crisis team called an ambulance.  The ambulance arrived and took Alyssa to Providence St. Joseph's Hospital Orange. Plaintiff followed in her car with her service dog Mason.  When Plaintiff arrived at the emergency room at Providence St. Joseph's Hospital Orange ("Hospital") located at 1100 West Stewart Drive, Orange, California 92868, Alyssa was already in the ER.  Plaintiff and Mason went to the entrance of the ER where they had to go through a security checkpoint. The security guards inspected Plaintiff's bag and

asked her if Mason is a service dog and what tasks he performed for her.  Plaintiff

answered the security guard's questions, and she was given a badge and allowed to

go inside the ER waiting room.

20.    Plaintiff was directed to where Alyssa was being treated inside the ER

treatment area, and Plaintiff went into the room as directed. Plaintiff sat in a chair in

the corner, and Mason settled himself under her chair, out of the way. After a few

minutes, a technician entered the room.  He looked at Plaintiff and Mason, sighed,

and then walked back out of the room. A few minutes later, a nurse entered the

room, whose first name on information and belief is Julene.  She turned to Plaintiff

and said, "Hello, are you Alyssa's mom?" Plaintiff confirmed that she is Alyssa's

mother.  The nurse then introduced herself to Plaintiff and said, "I just want to

make sure that your dog is not going to be a safety concern for my staff."  Plaintiff

was a bit stunned, and did not respond.  Mason had not made any noise and was

quietly lying down under Plaintiff's chair, and no one had mentioned Mason was a

safety concern until that moment. Then, the nurse asked Plaintiff how old her

daughter was, and Plaintiff responded that her daughter was 24 years old.  The

nurse then said, "well, since she's an adult, she probably doesn't need mom here.

Why don't you go and wait in your car with the dog?"

21.    Plaintiff expressed her surprise at the nurse's comment and told the

nurse did not think that was appropriate. Plaintiff expressed that she had a right to

be with her daughter regardless of her age. The nurse explained that her staff was

uncomfortable with Plaintiff's service dog.  The nurse then told Plaintiff that she

should either take her service dog to her car and leave him there, and then come

back, or that Plaintiff should wait in her car with her service dog. The nurse left.

22.    Shortly thereafter the technician walked back inside the room, looked

at Mason, and took a bag of Alyssa's belongings and abruptly dropped it to the

floor next to Mason. Mason did not react. Plaintiff believed the technician did this

with the expectation that it would bother or incite Mason. Plaintiff asked the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

technician if she was supposed to take the belongings. The technician said no, and that security would come in and mark it later. The technician left and came back a few minutes later and put a tag on the bag, getting very close to Mason. Mason again did not react.  Given the size of the room, and that Plaintiff would not be responsible for the bag, it made no sense for the technician to put the bag there other than to test to see Mason's reaction.  There was none.

23.    It was clear to Plaintiff that she was not welcome in the Providence St. Joseph's Hospital Orange ER with her service dog, but Plaintiff believed that the ADA protected her right to be accompanied by her service dog even in a hospital. Plaintiff decided to go outside for a moment so that she could let Mason relieve himself and make some phone calls to family.  As soon as she left Alyssa's room, Plaintiff noticed that two security guards had been stationed outside of her daughter's room, and when she walked toward the exit, she was followed by one of them. Plaintiff told the security guard that she knew where she was going and did not need an escort, but the security guard said that he would walk with her so that he could ensure that she got to her intended destination. It was clear to Plaintiff that Defendants do not welcome service dog teams like Plaintiff and Mason, and she felt intimidated by Defendants' security guards. Plaintiff did not see anyone without service dogs being escorted by security and felt she was being treated unequally by Defendants' actions.

24.    Plaintiff exited the Hospital.  She was outside for about five minutes and then decided to go back inside to check on Alyssa. Plaintiff approached the security checkpoint at the entrance to the ER, but when she attempted to go through, she was told by security that she would not be able to go back inside the ER with her service dog. Plaintiff explained that she had already been inside the ER with her service dog, but the security guard told Plaintiff that ER staff had told him that Plaintiff was not allowed to have her service dog inside the ER. The security guard told Plaintiff that if she wanted to go back inside the ER, she would have to

9

leave her service dog in her car. Plaintiff asked the security guard why, and the security guard responded that some people on the hospital staff do not like animals. The security guard explained that the staff "does not feel safe around animals while they're working."

25.    Plaintiff went to her car to make phone calls to the hospital to appeal the decision to bar her from entry with her service dog.  It would not be safe to leave Mason unattended in the car, and it would not be safe for her to be without Mason to alert her of potential changes in her medical condition, particularly considering the stress she was feeling due to her daughter's medical emergency.

26.    Plaintiff called the hospital with the intention of speaking with a hospital administrator. Eventually the assistant nurse manager, Stephanie, called her back and told Plaintiff that the hospital "has had a hard time coming to a consensus on a service animal policy" and the policy is constantly being revised because some staff do not like dogs, and do not feel comfortable with dogs being near while they are working. Plaintiff shared with Stephanie that she was really upset at not being able to see her child, and that this was now the second hospital that her daughter had been in today that did not allow service dogs.

27.    Plaintiff informed Stephanie that Defendant's staff had told her that she could not go back in to be with her daughter and relayed the facts above to Stephanie. Stephanie told her that she had been informed of the same thing by the hospital staff, including the technician's attempts to test and provoke Mason. Additionally, Stephanie told Plaintiff that the charge nurse had requested security escort her out of the building and not let her back in with her service dog. Plaintiff asked Stephanie whether she was upholding hospital policy by telling her she would not be allowed back inside with Mason. Stephanie said that regardless of the policy she was going to continue to exclude Plaintiff's service dog and affirmed the decision of the charge nurse, Jalene.  Stephanie admitted that she tried to look up the official service dog policy of the Hospital but she could not find one.

28.    Plaintiff did not give up on reuniting with her daughter.  She went to get something to eat at Corner Bakery, which did not deny her use of her service dog. She then went back to try to convince the hospital to let her back inside to see her daughter. She was again denied by security.

29.    Day turned into night and new staff came on at about 7 pm. Plaintiff waited for the new staff to on duty, and then she called to inquire about her daughter's status. Hospital staff said they would re-evaluate Alyssa, then ultimately discharged her. It took another 2 hours for them to discharge Alyssa. Plaintiff was waiting in her vehicle the entire time after she had been barred from Hospital, approximately 8.5 - 9 hours.

30.    Plaintiff may have the need to use the services of Providence St. Joseph's Hospital Orange when she or her daughter have the need for medical care in the area. However, Plaintiff cannot return until *after* Defendants have implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the Hospital until these policies and training are in place.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq.*)

31.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 30, above, and incorporates them herein by reference as if separately repled hereafter.

32.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing

existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

33.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

34.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

35.    Providence St. Joseph's Hospital Orange is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(F).

36.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

37.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.** For example, in a hospital it usually would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a

service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Ibid.*, emphasis in original.

38.     Defendants have a policy and practice of denying services to visitors with service animals at the Hospital. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added). The Department of Justice FAQ on Service Animals further clarifies:

**Q14**. **Does a hospital have to allow an in-patient with a disability to keep a service animal in his or her room?**

**A.** Generally, yes. *Service animals must be allowed in patient rooms and anywhere else in the hospital the public and patients are allowed to go*. They cannot be excluded on the grounds that staff can provide the same services.

https://www.ada.gov/resources/service-animals-faqs/. (emphasis added).

39.     On information and belief, as of the date of Plaintiff's most recent visits to the Hospital on or about December 27, 2024, Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal

enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

40.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

41.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "hospital"  42 USC § 12181(7)(F).

42.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good,

service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

43.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily

1    achievable."

2    44.    On information and belief, as of the dates of Plaintiff's encounters at

3    the premises and as of the filing of this Complaint, Defendants' actions, policies,

4    and physical premises have denied and continue to deny full and equal access to

5    Plaintiff and to other disabled persons who work with service dogs, which violates

6    Plaintiff's right to full and equal access and which discriminates against Plaintiff on

7    the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal

8    enjoyment of the goods, services, facilities, privileges, advantages and

9    accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

10    45.    Defendants' actions continue to deny Plaintiff's rights to full and equal

11    access by deterring Plaintiff from visiting the Hospital and discriminated and

12    continue to discriminate against Plaintiff on the basis of her disabilities, thus

13    wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods,

14    services, facilities, privileges, advantages and accommodations, in violation of

15    section 12182 of the ADA.  42 U.S.C. § 12182.

16    46.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections

17    12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in

18    section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is

19    being subjected to discrimination on the basis of her disabilities in violation of

20    sections 12182 and 12183.  On information and belief, Defendants have continued

21    to violate the law and deny the rights of Plaintiff and other disabled persons to "full

22    and equal" access to this public accommodation since on or before Plaintiff's

23    encounters.  Pursuant to section 12188(a)(2)

24    [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)...
25    injunctive relief shall include an order to alter facilities to make such
      facilities readily accessible to and usable by individuals with disabilities
      to the extent required by this title.  Where appropriate, injunctive relief
26    shall also include requiring the provision of an auxiliary aid or service,
      modification of a policy, or provision of alternative methods, to the
27    extent required by this title.

28    47.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of

16

the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal

Regulations adopted to implement the Americans with Disabilities Act of 1990.

Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who

is being subjected to discrimination on the basis of disability in violation of Title III

and who has reasonable grounds for believing she will be subjected to such

discrimination each time that she may use the property and premises, or attempt to

patronize the Hospital, in light of Defendants' policies barriers.

　　　　WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH**
**ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS**
**WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

48.　　Plaintiff re-pleads and incorporates by reference, as if fully set forth

again herein, the allegations contained in Paragraphs 1 through 47 of this

Complaint and incorporates them herein as if separately re-pleaded.

49.　　At all times relevant to this action, the Unruh Civil Rights Act,

California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

50.　　California Civil Code section 52 provides that the discrimination by

Defendants against Plaintiff on the basis of disability constitutes a violation of the

general anti-discrimination provisions of sections 51 and 52.

51.　　Each of Defendants' discriminatory acts or omissions constitutes a

separate and distinct violation of California Civil Code section 52, which provides

that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four

17

thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

52.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

53.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

54.    **FEES AND COSTS:** As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

55.    Plaintiff suffered damages as above-described as a result of Defendants' violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

18

### THIRD CAUSE OF ACTION:
### DAMAGES AND INJUNCTIVE RELIEF
### FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC
### FACILITIES  IN A PUBLIC ACCOMMODATION
### (Civil Code §§ 54 *et seq.*)

56.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 55 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

57.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

58.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices…or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

59.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

60.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but

1   is not limited to, preventing or causing the prevention of a guide dog, signal dog, or

2   service dog from carrying out its functions in assisting a disabled person."

3       61.    Defendants are also in violation of California Penal Code section

4   365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially
> trained guide dog, signal dog, or service dog shall be denied admittance
> to accommodations, advantages, facilities, medical facilities, including
> hospitals, clinics, and physicians' offices, telephone facilities, adoption
> agencies, private schools, hotels, lodging places, places of public
> accommodation, amusement or resort, and other places to which the
> general public is invited within this state because of that guide dog,
> signal dog, or service dog.

    62.    Providence St. Joseph's Hospital Orange is a public accommodation within the meaning of the CDPA.  On information and belief, Defendants are the owners, operators, lessors or lessees of the public accommodation.

    63.    Defendants made the decision to knowingly and willfully exclude Plaintiff and her service dog from their public accommodation and thereby deny Plaintiff her right of entrance into their place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendants' exclusion of Plaintiff's legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and she faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to the Hospital until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since December 27, 2024, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

    64.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff

and other members of the public who are disabled and who require the assistance of service animals from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

65.    Plaintiff may have the need to return to patronize Providence St. Joseph's Hospital Orange but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Hospital and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

66.    The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendants' inaccessible policies.  As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons and those associated with them, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

67.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and

55, and other laws. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

68.    **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated. Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize Providence St. Joseph's Hospital Orange and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

69.    Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendants' behavior was intentional. Defendants were aware and/or were made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate

actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

70. **FEES AND COSTS:** As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

71. Plaintiff suffered damages as above described as a result of Defendants' violations. Damages are ongoing based on their deterrence from returning to the Hospital.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Pamela Ball prays for judgment and the following specific relief against Defendants:

23

1.    An order enjoining Defendants, its agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she need to enter and patronize Providence St. Joseph's Hospital Orange;

    c.  That the Court issue preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiff and similarly situated persons with disabilities and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

2.    An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.    An award of civil penalty as against Defendants under California Penal

24

Code § 365.5(c);

4.     An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5.     An award of prejudgment interest pursuant to Civil Code § 3291;

6.     Interest on monetary awards as permitted by law; and

7.     Grant such other and further relief as this Court may deem just and proper.

Date: February 20, 2025              CLEFTON DISABILITY LAW

                                          */s/ Aaron M. Clefton*
                                     By AARON M. CLEFTON, Esq.
                                     Attorneys for Plaintiff
                                     PAMELA BALL

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: February 20, 2025              CLEFTON DISABILITY LAW

                                          */s/ Aaron M. Clefton*
                                     By AARON M. CLEFTON, Esq.
                                     Attorneys for Plaintiff
                                     PAMELA BALL

25